**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22986-BLOOM/Elfenbein**

BRABUS GMBH,

Plaintiff,

v.

CUSTOM CAR GARAGE INC,
MVP EXOTIC CAR RENTALS LLC,
MATIAS CRUZ, and DANIEL PACHECO,

Defendants.
__________________________________/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendants Custom Car Garage Inc. ("Custom Car"), MVP Exotic Car Rentals LLC ("MVP"), Matias Cruz ("Cruz"), and Daniel Pacheco's ("Pacheco") (together, "Defendants") Motion to Dismiss Plaintiff's Complaint, ECF No. [31] ("Motion"). Plaintiff BRABUS GMBH ("Brabus") filed a Response in Opposition, ECF No. [36]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

## I. BACKGROUND

### A. Plaintiff's Trademarks

In the Complaint, Plaintiff alleges it is an automobile tuning company. ECF No. [1] ¶ 1. Automobile tuning refers to "enhancing, modifying and configuring a vehicle (such as the exterior, interior and/or engine) to optimize the vehicle for an enhanced appearance and performance when compared to the conventional specification for that vehicle." *Id*. Authentic products by Plaintiff

command top prices as a result of their design and quality. *Id*. Plaintiff's automotive tuning often adds over $150,000 to the price and resale value of a vehicle. *Id*.[1]

As part of its tuning work, Plaintiff owns the trademark for "Brabus" in connection with certain classes of goods. *Id.* ¶¶ 19, 21. Plaintiff also owns the trademark for a "B" design mark in connection with certain classes of goods (together with the "Brabus" trademark, the "Brabus Marks"). *Id.* ¶¶ 23, 25.

Approximately 90% of Plaintiff's United States business consists of its extensive line of SUV packages for the Mercedes Benz G-class, colloquially known as the G-Wagon. *Id.* ¶ 26. Plaintiff's offerings include exterior body kits, wheels, numerous interior components, significant powertrain and drivetrain upgrades. *Id.* ¶ 26. In addition to the exterior configuration, Plaintiff provides what are colloquially known as automobile "badges" or "logos" using its trademarked "B" for products such as wheels (hub cap covers), automobile interiors including headrests, front grilles, and more. *Id.* ¶ 27.

**B. Defendants' Alleged Infringing Activities**

Defendants are aware of Plaintiff's ownership of the Brabus Marks, including its exclusive right to use and license the use of the Brabus Marks. *Id.* ¶ 28. Moreover, prior to initiating the litigation here, Plaintiff sent cease-and-desist letters directly to Defendants, which were ignored. *Id.* ¶ 29. Defendants are promoting, advertising, distributing, offering for sale, and/or selling counterfeit Brabus-branded goods in interstate commerce bearing and/or using infringing, counterfeit and confusingly similar imitations of one or more of the Brabus Marks. *Id.* ¶ 30. They

[1] For example, a particular Mercedes model will be worth $195,550.00 before factory options and dealer markup. *Id.* ¶ 2. After engine tuning by Plaintiff and interior and exterior conversion, that same model will sell for more than $570,000.00 and, in some cases, for more than $750,000.000. *Id.* ¶ 3.

commit this infringement at least through their websites and associated sales within this district. *Id.* [2]

Defendants intentionally and willfully manufacture, advertise, and/or sell vehicle parts purported to be authentic parts from Plaintiff and bearing Plaintiff's markings. *Id.* ¶ 31. Defendants utilize the Brabus Marks on dozens—if not hundreds—of inauthentic parts including body kits, grilles, emblems, badges, lights, hoods, spoilers, doorstep inserts, spare wheel covers, steering wheels, and leather upholstery. *Id.* ¶ 32.

Further, Defendants customize and create interior upholstery for vehicles and intentionally include the Brabus Marks. *Id.* ¶ 33. They also intentionally and willfully manufacture, obtain, advertise, and/or sell individual counterfeit Brabus-branded goods to consumers who are looking to upgrade their vehicles with genuine Brabus parts. *Id.* ¶ 34.They knowingly install fake Brabus kits, also known as "clone kits," onto the vehicles. *Id.* ¶ 35. Defendants' counterfeit Brabus-branded goods are of an inferior quality compared to Plaintiff's genuine high-quality goods. *Id.* ¶ 41.

Defendants intentionally and willfully market and sell Brabus-branded goods to consumers, including high-profile athletes and celebrities, exploiting those individuals' visibility to create a broader channel of advertising and promotion and to foster a false sense of prestige and legitimacy in connection with Defendants' misappropriation and unlawful use of the Brabus Marks. *Id.* ¶ 43. Defendants have repeatedly advertised and promoted "custom" or "fully custom" Brabus vehicles, including but not limited to vehicles marketed as the "Brabus Rocket," which

[2] Defendant Cruz is the owner and operator of Defendant MVP, which operates one of the allegedly infringing websites. *Id.* ¶¶ 9, 12. Defendant Pacheco is the owner and operator of Defendant Custom, which operates the other allegedly infringing website. *Id.* ¶¶ 10, 11.

incorporate counterfeit Brabus-branded parts that are falsely represented as genuine Brabus performance components. *Id.* ¶ 44.

On January 21, 2026, Plaintiff sent a cease-and-desist letter directly to Defendants, advising them of the ongoing infringement and demanding that it stop. *Id.* ¶ 49. This request was ignored, and Defendants have continued selling counterfeit products and products infringing on the Brabus Marks. *Id.* ¶ 49.

In April 2026, Plaintiff brought the instant lawsuit, asserting 13 claims against Defendants:

- Trademark Infringement Pursuant to § 32 and/or § 42 of the Lanham Act (15 U.S.C. § 1114 and/or §1124) with respect to Trademark No. 2,628,813 (Count I)
- Trademark Infringement Pursuant to § 32 and/or § 42 of the Lanham Act (15 U.S.C. § 1114 and/or §1124) with respect to Trademark No. 6,762,978 (Count II)
- Trademark Infringement Pursuant to § 32 and/or § 42 of the Lanham Act (15 U.S.C. § 1114 and/or §1124) with respect to Trademark No. 2,610,469 (Count III)
- Trademark Counterfeiting Pursuant to § 32 and/or § 42 of the Lanham Act (15 U.S.C. § 1114 and/or §1124) with respect to Trademark No. 2,628,813 (Count IV)
- Trademark Counterfeiting Pursuant to § 32 and/or § 42 of the Lanham Act (15 U.S.C. § 1114 and/or §1124) with respect to Trademark No. 6,762,978 (Count V)
- Trademark Counterfeiting Pursuant to § 32 and/or § 42 of the Lanham Act (15 U.S.C. § 1114 and/or §1124) with respect to Trademark No. 2,610,469 (Count VI)
- False Designation of Origin or Sponsorship and False Advertising Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1225(a)) with respect to Trademark No. 2,628,813 (Count VII)
- False Designation of Origin or Sponsorship and False Advertising Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1225(a)) with respect to Trademark No. 6,762,978 (Count VIII)
- False Designation of Origin or Sponsorship and False Advertising Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1225(a)) with respect to Trademark No. 2,610,469 (Count IX)
- Trademark Dilution Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1225(c)) with respect to Trademark No. 2,628,813 (Count X)
- Trademark Dilution Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1225(c)) with respect to Trademark No. 6,762,978 (Count XI)
- Trademark Dilution Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1225(c)) with respect to Trademark No. 2,610,469 (Count XII)
- Violation of Florida Deceptive and Unfair Trade Practices Act (Count XIII)

*See generally id.*

In July 2026, Defendants filed the Motion, arguing the Complaint should be dismissed as a shotgun pleading, as it "improperly commingles various claims against all Defendants without specificity as to each Defendant and, therefore, fails to state a cause of action for each of the alleged Counts." ECF No. [31] at 2. Moreover, the Complaint lacks any particular allegations against Cruz or Pacheco. *Id.* at 6. Plaintiff responds that the Complaint is not a shotgun pleading, as Plaintiff properly explains each Defendant's liability for each Count and the liability of Cruz and Pacheco has been sufficiently pled. ECF No. [36] at 3–4.

## II. LEGAL STANDARDS

When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, the court may consider additional documents when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

## III. DISCUSSION

Derived from Federal Rule of Civil Procedure 8(a)(2), a shotgun pleading is defined as "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading[.]" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128–29 (11th Cir. 2001)). Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009) (citations omitted).

The Eleventh Circuit has identified four types of shotgun pleadings, the "unifying characteristic" of which being that all shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The first and "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second type of shotgun pleading is the complaint that is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is the pleading "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Fourth is the pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Importantly, with respect to the fourth type of shotgun pleading, "[t]he fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Indeed, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997). That is, when defendants are referred to collectively, the usual solution is to construe allegations containing the collective references as "applying to each defendant individually." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014). The shotgun pleading problem only emerges where the collective reference "results in a complaint that fails to give each defendant notice of the claims against it," id.—that is where "the plaintiff pleads broad allegations

that could not have applied to the defendants as a collective." *Zeltser v. Hilton Resorts Corp.*, No. 23-CV-21077-JEM, 2024 WL 7001842, at *2 (S.D. Fla. July 11, 2024) (citation omitted); *see also Magluta v. Samples*, 256 F.3d 1282, 1285 (11th Cir. 2001) (holding that a complaint was an impermissible shotgun pleading when each defendant was charged in each count even when "geographic and temporal realities" demonstrated that it was impossible for all defendants to have participated in the acts of each count).

Here, the Defendants are alleged to be related. Cruz is alleged to be the owner and operator of MVP, which operates one of the allegedly infringing websites. ECF No. [1] ¶¶ 9, 12. Pacheco is the owner and operator of Custom, which operates the other allegedly infringing website. *Id.* ¶¶ 10, 11. Each claim can be properly read as applying to each Defendant individually, and as such, there is no shotgun pleading problem. Indeed, court in this circuit confronting similar challenges to collective references routinely decline to find a shotgun pleading so long as the complaint can be read to "aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000); *see also Barrakuda Ltd. v. Zazaby Jewels, Inc.*, No. 19-23004-CV, 2020 WL 7493097, at *3 (S.D. Fla. Sept. 24, 2020); *Monilaw v. Mercedes Benz Grp. AG*, No. 1:24-CV-00608-TWT, 2025 WL 2163761, at *5 (N.D. Ga. July 30, 2025); *Restless Media GmbH v. Johnson*, No. 22-CV-80120-RAR, 2023 WL 2836971, at *7 (S.D. Fla. Feb. 1, 2023); *Norris v. Honeywell Int'l, Inc.*, No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *4–5 (M.D. Fla. Sept. 26, 2023). The Court sees no shotgun pleading issue here.

Moreover, the Court disagrees with Defendants that Plaintiff's allegations against Cruz and Pacheco are insufficient. An individual can be found liable under the Lanham Act "upon a showing that they actively and knowingly caused the infringement." *Glob. Van Lines, Inc. v. Glob. Van Lines, Inc.*, No. 05-61410 CIV, 2006 WL 8431578, at *2 (S.D. Fla. June 6, 2006), *report and*

*recommendation adopted*, No. 05-61410-CIV, 2006 WL 8431579 (S.D. Fla. July 3, 2006) (citing *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). Indeed, individual liability attaches where "an individual actively and knowingly caused the infringement" such that he was a "moving, active, conscious force." *Chanel*, 931 F.2d at 1477–78 (citations omitted). If the allegations here are taken as applying to Cruz and Pacheco—as they must be—there is no doubt that Plaintiff has stated a claim for Lanham Act infringement by Cruz and Pacheco. For instance, the allegations include Defendants "intentionally and willfully" offering vehicle parts that purport to be Brabus parts and bear Brabus markings. ECF No. [1] ¶ 31. If the term "Defendants" is understood to encompass Cruz and Pacheco, such an allegation would imply active and knowing causation of the alleged infringement by the two individual Defendants. Moreover, Cruz and Pacheco are alleged to "control[], operate[] and direct[] the infringing use of the Brabus Marks through the entities and personally." *Id.* ¶ 38. That is sufficient to state a claim for individual Lanham Act liability. Accordingly, the Court sees no merit in Defendants' arguments pertaining to Cruz and Pacheco individually. The Motion is therefore denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion, **ECF No. [31]**, is **DENIED**.
2. Defendants shall file their Answers to the Complaint **by October 9, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 25, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record